# EXHIBIT 1

**SUMMONS - CIVIL**
JD-CV-1  Rev. 9-14
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. Secs. 3-1 through 3-21, 8-1

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
www.jud.ct.gov

**See other side for instructions**

| | |
|---|---|
| ☐ "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500. | **TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.** |
| ☒ "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more. | |
| ☐ "X" if claiming other relief in addition to or in lieu of money or damages. | |

| Address of court clerk where writ and other papers shall be filed (Number, street, town and zip code) (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk (with area code) | Return Date (Must be a Tuesday) |
|---|---|---|
| 14 West River Street, Milford 06460 | ( 203 ) 579-6527 | August    4   2015 |
| | | Month    Day    Year |

| ☐ Judicial District | G.A. | At (Town in which writ is returnable) (C.G.S. §§ 51-346, 51-349) | Case type code (See list on page 2) |
|---|---|---|---|
| ☐ Housing Session | Number: | Milford | Major: T    Minor: 90 |

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented (Number, street, town and zip code) | Juris number (to be entered by attorney only) |
|---|---|
| Nicole W. Fox, The Sobelsohn Law Firm, 21 Benedict Pl., Greenwich, CT 06830 | 416762 |

| Telephone number (with area code) | Signature of Plaintiff (if self-represented) |
|---|---|
| ( 310 ) 775-0504 | |

| The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book. | ☒ Yes  ☐ No | Email address for delivery of papers under Section 10-13 (if agreed to) dsobelsohn@sobelsohnlaw.com |
|---|---|---|

| Number of Plaintiffs: 1 | Number of Defendants: 1 | ☐ Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | Name (Last, First, Middle Initial) and Address of Each party (Number; Street; P.O. Box; Town; State; Zip; Country, if not USA) | |
|---|---|---|
| **First Plaintiff** | Name: Jenessa Gardner<br>Address: 2553 East Hampton Ave., Mesa, AZ 85204 | P-01 |
| **Additional Plaintiff** | Name:<br>Address: | P-02 |
| **First Defendant** | Name: Ruby Tuesday, Inc.<br>Address: CT Coroporation System, One Corporate Center, Hartford, CT 06103-3220 | D-01 |
| **Additional Defendant** | Name:<br>Address: | D-02 |
| **Additional Defendant** | Name:<br>Address: | D-03 |
| **Additional Defendant** | Name:<br>Address: | D-04 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at www.jud.ct.gov under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at www.jud.ct.gov under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. The Clerk of Court is not allowed to give advice on legal questions.

| Signed (Sign and "X" proper box) | ☒ Commissioner of the Superior Court ☐ Assistant Clerk | Name of Person Signing at Left | Date signed |
|---|---|---|---|
| Nicole W. Fox | | Nicole W. Fox | 6/26/2015 |

| If this Summons is signed by a Clerk: | For Court Use Only |
|---|---|
| a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts. | File Date |
| b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law. | |
| c. The Clerk is not permitted to give any legal advice in connection with any lawsuit. | **ATTEST:** |
| d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint. | **A TRUE COPY** |

| I certify I have read and understand the above: | Signed (Self-Represented Plaintiff) | Date | **CHARLES J. LILLEY** |
|---|---|---|---|
| Name and address of person recognized to prosecute in the amount of $250 | | | **CONNECTICUT MARSHAL HARTFORD COUNTY** |

| Signed (Official taking recognizance; "X" proper box) | ☐ Commissioner of the Superior Court ☐ Assistant Clerk | Date | Docket Number |
|---|---|---|---|

[ Print Form ]        (Page 1 of 2)        [ Reset Form ]

## Instructions

1. Type or print legibly; sign summons.
2. Prepare or photocopy a summons for each defendant.
3. Attach the original summons to the original complaint, and attach a copy of the summons to each copy of the complaint. Also, if there are more than 2 plaintiffs or more than 4 defendants prepare form JD-CV-2 and attach it to the original and all copies of the complaint.
4. After service has been made by a proper officer, file original papers and officer's return with the clerk of court.
5. The party recognized to pay costs must appear personally before the authority taking the recognizance.
6. Do not use this form for the following actions:

(a) Family matters (for example divorce, child support, custody, paternity, and visitation matters).
(b) Summary process actions.
(c) Applications for change of name.

(d) Probate appeals.
(e) Administrative appeals.
(f) Proceedings pertaining to arbitration.
(g) Any actions or proceedings in which an attachment, garnishment or replevy is sought.

### ADA NOTICE

The Judicial Branch of the State of Connecticut complies with the Americans with Disabilities Act (ADA). If you need a reasonable accommodation in accordance with the ADA, contact a court clerk or an ADA contact person listed at *www.jud.ct.gov/ADA*.

## Case Type Codes

| Major Description | Codes Major/Minor | Minor Description | Major Description | Codes Major/Minor | Minor Description |
|---|---|---|---|---|---|
| Contracts | C 00 | Construction - All other | Torts (Other than Vehicular) | T 02 | Defective Premises - Private - Snow or Ice |
| | C 10 | Construction - State and Local | | T 03 | Defective Premises - Private - Other |
| | C 20 | Insurance Policy | | T 11 | Defective Premises - Public - Snow or Ice |
| | C 30 | Specific Performance | | T 12 | Defective Premises - Public - Other |
| | C 40 | Collections | | T 20 | Products Liability - Other than Vehicular |
| | C 90 | All other | | T 28 | Malpractice - Medical |
| Eminent Domain | E 00 | State Highway Condemnation | | T 29 | Malpractice - Legal |
| | E 10 | Redevelopment Condemnation | | T 30 | Malpractice - All other |
| | E 20 | Other State or Municipal Agencies | | T 40 | Assault and Battery |
| | E 30 | Public Utilities & Gas Transmission Companies | | T 50 | Defamation |
| | E 90 | All other | | T 61 | Animals - Dog |
| | | | | T 69 | Animals - Other |
| Miscellaneous | M 00 | Injunction | | T 70 | False Arrest |
| | M 10 | Receivership | | T 71 | Fire Damage |
| | M 20 | Mandamus | | T 90 | All other |
| | M 30 | Habeas Corpus (extradition, release from Penal Institution) | Vehicular Torts | V 01 | Motor Vehicles* - Driver and/or Passenger(s) vs Driver(s) |
| | M 40 | Arbitration | | V 04 | Motor Vehicles* - Pedestrian vs. Driver |
| | M 50 | Declaratory Judgment | | V 05 | Motor Vehicles* - Property Damage only |
| | M 63 | Bar Discipline | | V 06 | Motor Vehicle* - Products Liability Including Warranty |
| | M 66 | Department of Labor Unemployment Compensation Enforcement | | V 09 | Motor Vehicle* - All other |
| | M 68 | Bar Discipline - Inactive Status | | V 10 | Boats |
| | M 70 | Municipal Ordinance and Regulation Enforcement | | V 20 | Airplanes |
| | M 80 | Foreign Civil Judgments - C.G.S. 52-604 & C.G.S 50a-30 | | V 30 | Railroads |
| | M 82 | Housing Civil Matters | | V 40 | Snowmobiles |
| | M 83 | Small Claims Transfer to Regular Docket | | V 90 | All other |
| | M 84 | Foreign Protective Order | | | *Motor Vehicles include cars, trucks, motorcycles, and motor scooters |
| | M 90 | All other | | | |
| Property | P 00 | Foreclosure | | | |
| | P 10 | Partition | Wills, Estates and Trusts | W 10 | Construction of Wills and Trusts |
| | P 20 | Quiet Title/Discharge of Mortgage or Lien | | W 90 | All other |
| | P 30 | Asset Forfeiture | | | |
| | P 90 | All other | | | |

JD-CV-1 Rev  9-14 (Back/Page 2)

Print Form          (Page 2 of 2)          Reset Form

RETURN DATE: August 4, 2015

| | | |
|---|---|---|
| JENESSA GARNDER, | ) | SUPERIOR COURT |
| Plaintiff, | ) | |
| vs. | ) | ANSONIA-MILFORD JUDICIAL |
| RUBY TUESDAY, INC., | ) | DISTRICT |
| Defendant. | ) | AT MILFORD |
| | ) | JUNE 26, 2015 |

## COMPLAINT

**I.    Preliminary Statement**

1.      Plaintiff Jenessa Gardner was employed as a waitress at the Ruby Tuesday restaurant in Shelton, Connecticut, until she was terminated for having threatened to seek redress for the constant unlawful conduct she endured at the hands of her supervisors and co-workers, including assault and battery.

2.      This action is brought by Ms. Gardner to seek redress for:

(i)     Having to endure repeated instances of assault and battery by supervisors and co-workers consisting of deliberate touching of her breasts, and nipples, and having male employees deliberately rub up against her;

(ii)    False imprisonment in the private locked office of her supervisor during which he made sexual overtures to her and commented on her breasts;

(iii)   Constant and pervasive sexual harassment by her managers and co-workers and the

1

hostile work environment it created, including daily comments about her breasts and body parts, the exhibition of sexually explicit photographs by her supervisor, and comments by her supervisor about his preferences in terms of sexual positions and acts, and his personal sex life; and

(iv)    The retaliatory termination of her employment for threatening to escalate her complaints about the unlawful conduct she was subjected to.

3.      Ms. Gardner asserts claims under Connecticut General Statutes 46a-51, *et seq.* for sexual harassment, sexual discrimination, hostile work environment, and retaliatory discharge.   In addition, Ms. Gardner asserts common law claims for assault, battery, false imprisonment, intentional/negligent infliction of emotional distress, negligent supervision, common law wrongful termination, and aiding and abetting.

**II.    Jurisdictional Prerequisites**

4.      The plaintiff timely filed her discrimination complaint with the Connecticut Commission on Human Rights and Opportunities and obtained a release of jurisdiction dated March 31, 2015.

**III.   The Parties**

5.      Plaintiff Jenessa Gardner was employed as a server at the Ruby Tuesday restaurant in Shelton, Connecticut, and presently resides in Arizona.

6.      Defendant Ruby Tuesday, Inc. ("Ruby Tuesday") is a Georgia corporation with its headquarters in Maryville, Tennessee.   Ruby Tuesday owns and operates "Ruby Tuesday" restaurants throughout the United States including Connecticut.   Ruby Tuesday has more than three employees.

7.      Shane Weeks was the general manager of the restaurant and had authority over Ms. Gardner.  Mr. Weeks was transferred from the Shelton, Connecticut Ruby Tuesday to a *Ruby Tuesday in Florida.*

8.      Sean Leary was the Assistant General Manager of the restaurant and had authority over Ms. Gardner.  Plaintiff is informed that Mr. Leary resides in Connecticut.

9.      Curtis Fredericks was the kitchen manager of the restaurant. Plaintiff is informed that Mr. Fredericks resides in Connecticut.

10.     Steven Febrees was a server and trainer at the restaurant. Plaintiff is informed that Mr. Febrees resides in Connecticut.

**IV.    General Allegations**

11.     Ms. Gardner was employed as a server at the Ruby Tuesday restaurant located at 811 Bridgewater Avenue in Shelton, Connecticut from September 2012 through November 2013.  Ms. Gardner was at all times fully qualified for the job.

12.     Mr. Weeks, the general manager, spoke openly and explicitly about his sexual activities in front of Ms. Gardner and other employees almost every day Ms. Gardner worked at the restaurant.

13.     Mr. Weeks frequently spoke to both male and female workers including Ms. Gardner, Jessica James, April Rivera, and others about his sex life.

14.     Mr. Weeks was in the habit of showing workers, including Ms. Gardner, pictures of women he claimed to have had sexual relations with and then describing his sexual activities with them in explicit detail.  He would also show workers, including Ms. Gardner, pictures, texts, and online post/sites of a sexual nature.

3

15.     Mr. Weeks would also describe various sexual scenarios he would engage in with his girlfriend and described the sexual positions he enjoyed most and the methods by which he liked to ejaculate.

16.     Mr. Weeks also frequently complained about the low frequency of sexual relationship with his girlfriend.  On several occasions he said, "She won't blow me," how "horny" he was, and "I just gotta get laid."

17.     On at least three occasions Mr. Weeks discussed the size of his genitalia with servers including Ms. Gardner, and asked Ms. Gardner if she would like to see his penis.

18.     Mr. Weeks would also frequently discuss anal sex.

19.     Mr. Weeks would also tell servers, including Mr. Gardner, about his trips to various gentlemen's clubs with male employees including Curtis Fredericks, and Steven Febrees, and others, and the dancers they had met.

20.     Ms. Gardner also overheard Mr. Weeks making explicitly sexual comments to April Rivera, a server.  This appeared to make Ms. Rivera very uncomfortable.  She made many complaints to Ms. Gardner about how uncomfortable Mr. Weeks made her feel and "what a creep" he was.

21.     Mr. Weeks misconduct was also directed at Ms. Gardner.  During every shift Ms. Gardner worked, Mr. Weeks would make comments to Ms. Gardner and others about Ms. Gardner's breasts, including comments about their size, and speculating or inquiring as to whether they were real or fake, and remarking that her breasts were nice.

22.     Ms. Gardner repeatedly told him to stop making these comments, but he ignored her and kept making the comments.

4

23.     Mr. Weeks continued to make comments about Ms. Gardner's breasts every shift she worked, despite her protests. As time went on, Mr. Weeks' sexual interest in Ms. *Gardner and her breasts escalated* from catcall type remarks to false imprisonment, assault, and battery.

24.     In April of 2013, Ms. Gardner went to Mr. Weeks' very small office at the restaurant to cash out after her shift.   Mr. Weeks closed the door behind Ms. Gardner, automatically locking it, so no one else could enter.  This was unusual, because the door was always kept open and unlocked.  There was no need for Mr. Weeks to close and lock the door while cashing out food servers after their shifts, and he had never done so before with Ms. Gardner.  Confining Ms. Gardner to his locked private office was not part of the "cashing out" process, and was unusual and highly irregular.   Given Mr. Weeks repeated comments of a sexual nature directed towards Ms. Gardner, being confined in a locked office with Mr. Weeks made Ms. Gardner uncomfortable and uneasy.

25.     Mr. Weeks told Ms. Gardner that she had to remain in the locked private office with Mr. Weeks in order to complete 'cashing out" as required at the end of her shift, and get paid after her shift, and she was not free to leave without his consent.

26.     While confined by Mr. Weeks within his locked private office, Mr. Weeks told Ms. Gardner that he wanted to touch Ms. Gardner's breasts and that her breasts were a constant distraction for him. Mr. Weeks also asked Ms. Gardner at least five times whether her breasts were "real or fake."

27.     Ms. Gardner told Mr. Weeks to stop talking about her breasts, that his questions made her feel uncomfortable, and that she could not believe he was asking her these questions.

28.     Ms. Gardner wanted to leave and told Mr. Weeks, "Come on, I have to go." Only after demanding to leave at least three times, did Mr. Weeks finally hand Ms. Gardner the money she had earned, and finally allow Ms. Gardner to leave.

29.     Ms. Gardner felt violated by Mr. Weeks, and was extremely distressed.  The next day Ms. Gardner told the assistant manager at the time, Sean Leary, about the incident. Mr. Leary pleaded with Ms. Gardner not to call Ruby Tuesday's corporate headquarters, and promised that he, as the assistant manager and her supervisor, would deal with the issue.

30.     However, Mr. Weeks' conduct continued and escalated further into physical touching of a sexual nature, and other employees, apparently taking his lead, began to do the same.

31.     Beginning in September 2013, Mr. Weeks began to intentionally brush up against Ms. Gardner's breasts when he passed her.  Mr. Weeks would usually laugh and mockingly apologize.  Mr. Weeks did this to Ms. Gardner at least once a week until he was transferred in November of 2013.  Usually Ms. Gardner would awkwardly smile as Mr. Weeks suggested that the physical contact with her breasts was an accident. Ms. Gardner would respond, "Yeah ok" to which Mr. Weeks' response was usually, "Well, they're big and always in the way."

32.     Also starting in September 2013, Curtis Fredericks, the kitchen manager, would do the same thing to Ms. Gardner as Mr. Weeks and intentionally brush up against Ms. Gardner's breasts and pretend the contact was accidental.  Mr. Fredericks did this three or four times a week to Ms. Gardner for the rest of her time at Ruby Tuesday.

33.     Ms. Gardner again brought the issues of Mr. Weeks and Mr. Fredericks'

brushing up against her and Mr. Weeks' continued explicitly sexual conversations to the attention of Sean Leary, the assistant manager at the time, and her supervisor.  Mr. Leary begged Ms. Gardner not to call Ruby Tuesday's corporate headquarters and told her that he would investigate and that "things would have to change around here."  They never did.

34.    In September of 2013, Steven Febrees, a server and trainer, began to comment on Ms. Gardner's nipples.  Ms. Gardner told him to stop doing so, but her requests were ignored.  Mr. Febrees continued to comment on Ms. Gardner's breasts for the rest of her time at Ruby Tuesday.

35.    On one occasion in October of 2013, Mr. Febrees grabbed Ms. Gardner's buttocks while she was clocking out and said "I think I'm becoming an ass man."

36.    Later in October 2013, Mr. Febrees came up to Ms. Gardner and grabbed her nipple.  Mr. Febrees did the same thing later in that same shift as well.  Ms. Gardner told him that he had hurt her and to stop.  Mr. Febrees responded that he wanted to see Ms. Gardner's nipples get hard.

37.    Ms. Gardner complained to Shawn Leary that same night about Mr. Febrees' conduct.  Mr. Leary laughed at Mr. Febrees' actions and told Ms. Gardner that he'd take care of it.  Mr. Leary did not seem to take Ms. Gardner's report seriously.

38.    Mr. Febrees did not stop touching and grabbing at Ms. Gardner's nipples. Several times per shift the following week Mr. Febrees would pinch or flick his fingers at Ms. Gardner's nipples.

39.    Also in October of 2013, Ms. Gardner was standing near the hostess station in the presence of Mr. Weeks, Mr. Febrees, and the hostess on duty.  Mr. Weeks kept insisting

7

that Ms. Gardner feel the muscles in his legs. Ms. Gardner refused. Mr. Weeks then grabbed Mr. Gardner's hand and brought it forcibly to Mr. Weeks' inner thigh, close to his genitals.

40.     Mr. Weeks was subsequently transferred to a different Ruby Tuesday restaurant. Mr. Leary then became the acting general manager.

41.     The conduct of Mr. Febrees and Mr. Fredericks continued while Mr. Leary was acting general manager. Mr. Febrees and Mr. Fredericks continued to pretend to accidently brush up against Ms. Gardner's breasts and Mr. Febrees continued to comment on and pinch or flick his fingers at Ms. Gardner's nipples.

42.     In October of 2013, Ms. Gardner frequently worked the closing server shift. As such, her duties included making sure the other servers finished their work before they left.

43.     Ms. Gardner often needed to remind a server named "Rich" to finish his cleaning. Rich would usually swear at Ms. Gardner and use abusive language. Sometimes Ms. Gardner was so upset by this that another server, Sherri James, would speak to Rich about finishing his work.

44.     After several instances of Rich screaming and swearing at her, Ms. Gardner again went to Mr. Leary to complain. Mr. Leary did nothing.

45.     On a Wednesday in November, Rich stormed into the kitchen and starting screaming at Ms. Gardner and threatened to hit her. Rich grabbed Ms. Gardner's arm and pushed her into a corner, screaming "Don't you ever speak to me that way!" Rich told Ms. Gardner that if she were a man, he would kill her and put her body in the dumpster. Ms. Gardner was confused because the only thing she had said to Rich that day was that she had started one of his tables for him, which was not an unusual occurrence at the restaurant. Ms.

Gardner also believed that Rich was under the influence of drugs.

46.     Paul Podemski pulled Rich away from Ms. Gardner and told Rich to calm down.

47.     Mr. Podemski immediately texted Mr. Leary about the incident.  Mr. Leary responded that he'd deal with it when he came in.

48.     Ms. Gardner later learned that Sherri James told Mr. Leary that he should call the police and report the incident.  Mr. Leary refused to do so.

49.     Ms. Gardner came in for her shift two days later on a Friday and Mr. Leary asked to see her in his office.  Mr. Fredericks was also present.

50.     Mr. Leary told Ms. Gardner that he was firing Rich.  He then said he did not want to be bothered with addressing the details of the incident between Ms. Gardner and Rich, and fired Ms. Gardner as well.

## COUNT ONE: SEXUAL HARRASSMENT, DISCRIMINATION, AND HOSTILE WORK ENVIRONMENT  IN VIOLATION OF CONNECTICUT GENERAL STATUTE § 46a-60(a)(1).

51.     The preceding paragraphs are incorporated into this Count as if fully set forth herein.

52.     Defendant Ruby Tuesday violated Connecticut General Statute § 46a-60(a)(1) by discriminating against plaintiff because of her sex, harassing her because of her sex, and subjecting plaintiff to a hostile work environment because of her sex.

## COUNT TWO: RETALIATION AND WRONGFUL DISCHARGE IN VIOLATION OF CONNECTICUT GENERAL STATUTES § 46a-60(a)(4)

53.     The preceding paragraphs are incorporated into this Count as if fully set forth herein.

54.     Plaintiff's repeated complaints about sexual harassment to her supervisor and

9

the general manager of the Ruby Tuesday restaurant where she worked were a protected activity.

55.   Defendant Ruby Tuesday was aware of the complaints of sexual harassment.

56.   However, rather than investigate Plaintiff's complaints, Ruby Tuesday, acting through its onsite management, retaliated by escalating the verbal harassment to false imprisonment as well as assault and battery by allowing employees to engage in repeated unwanted touching of Plaintiffs breasts and nipples.

57.   Defendant Ruby Tuesday violated Connecticut General Statute § 46a-60(a)(1) by retaliating against Plaintiff for reporting sexual harassment.

## COUNT THREE: WRONGFUL DISCHARGE IN VIOLATION OF CONNECTICUT GENERAL STATUTES 46a-60(a)(4)

58.   The preceding paragraphs are incorporated into this Count as if fully set forth herein.

59.   Plaintiff's repeated complaints about sexual harassment to her supervisor and the general manager of the Ruby Tuesday restaurant where she worked were a protected activity.

60.   Defendant Ruby Tuesday was aware of the complaints of sexual harassment.

61.   However, rather than investigate Plaintiff's complaints, Defendant, acting through its onsite management retaliated by escalating the harassment and continuing to subject Plaintiff to a hostile work environment.  After Plaintiff continued to press her complaints, Defendant, acting through the general manager of the restaurant where she worked, fired Plaintiff in retaliation for having persisted with her complaints.

## COUNT FOUR: COMMON LAW WRONGFUL TERMINATION

### (in the alternative)

62.    The preceding paragraphs are incorporated into this Count as if fully set forth herein.

63.    Defendant Ruby Tuesday terminated plaintiff because of her complaints about sexual harassment and unlawful conduct.

64.    Defendant Ruby Tuesday's conduct violates an important public policy of permitting employees to complain of unlawful conduct, including physical assaults and false imprisonment by their supervisors and co-workers, without fear of retaliation by their employer.

## COUNT FIVE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

65.    The preceding paragraphs are incorporated into this Count as if fully set forth herein.

66.    Subjecting Plaintiff to constant and repeated "catcalls" about her breasts, exposure to sexually explicit discussions and images, unwelcome sexual propositions such as offers by Shane Weeks to expose his penis to her, repeated unwanted touching of her breasts and nipples, an attempt by Shane Weeks to have her forcibly touch him on or near his crotch, and the false imprisonment of Plaintiff during which she was subjected to unwelcome sexual overtures and comments about her breasts, was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

67.    Shane Weeks, Steven Febrees, and Curtis Fredericks intended to inflict

11

emotional distress, or knew or should have known that emotional distress was the likely result of their conduct.

68.    Plaintiff did suffer emotional distress caused by the conduct, and the emotional distress sustained by the plaintiff was severe.

69.    Shane Weeks, Steven Febrees, and Curtis Fredericks were employees of Ruby Tuesday and were on duty and performing their job functions for Ruby Tuesday at the time the conduct occurred.  The conduct occurred on the premises of the Ruby Tuesday restaurant where Plaintiff worked.

**COUNT SIX: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

70.    The preceding paragraphs are incorporated into this Count as if fully set forth herein.

71.    Shane Weeks, Steven Febrees, and Curtis Fredericks should have known that it was likely that a reasonable person under the circumstances would be distressed by the conduct that they subjected Plaintiff to, and that such emotional distress could cause illness or bodily injury.

72.    Plaintiff suffered emotional distress caused by the conduct, and the emotional distress sustained by Plaintiff was of such a nature as might result in illness or bodily harm.

73.    Shane Weeks, Steven Febrees, and Curtis Fredericks were employees of Ruby Tuesday and were on duty and performing their job functions for Ruby Tuesday at the time the conduct occurred.  The conduct occurred on the premises of the Ruby Tuesday restaurant where Plaintiff worked.

## COUNT SEVEN: AIDING AND ABETTING (in the alternative)

74.     The preceding paragraphs are incorporated into this Count as if fully set forth herein.

75.     In response to Plaintiffs' complaints about the conduct of Mr. Weeks, Mr. Febrees and Mr. Fredericks, Mr. Leary, who was an agent of defendant Ruby Tuesday, failed to take action to protect Ms. Gardner or address the conduct at issue.  Accordingly, Mr. Leary and Ruby Tuesday aided and abetted the sexual harassment and hostile work environment to which Plaintiff was subjected.

## COUNT EIGHT: NEGLIGENT SUPERVISION

76.     The preceding paragraphs are incorporated into this Count as if fully set forth herein.

77.     Ruby Tuesday owed a duty to ensure the safety of its employees, including Plaintiff, and to take steps to prevent its managers from inflicting emotional distress upon, or engaging in assault, battery, and false imprisonment of the employees they supervise.

78.     Ruby Tuesday failed to exercise reasonable care to protect Plaintiff from the conduct of Mr. Weeks, Mr. Fredericks, and Mr. Febrees.  Plaintiff's repeated complaints to her supervisor were simply ignored, and the harassing conduct continued and escalated in retaliation for her complaints.

79.     Rather than protect Plaintiff, Ruby Tuesday allowed retaliation against her, while rewarding Mr. Weeks with a transfer to a Ruby Tuesday location in Florida.

## COUNT NINE: FALSE IMPRISOMENT

80.     The preceding paragraphs are incorporated into this Count as if fully set forth

herein.

81.     Shane Weeks, the general manager of the Ruby Tuesday branch where Plaintiff worked, intentionally confined Plaintiff to his private office by closing and locking the door behind her when she came to get paid after her shift. Mr. Weeks did not immediately pay Plaintiff her wages, but instead proceeded to subject Plaintiff to sexual overtures and comments about her breasts. Plaintiff did not acquiesce in this confinement and repeatedly told Mr. Weeks that she was not comfortable and wanted to leave. It was only after repeated pleas from Plaintiff that Mr. Weeks agreed to let her go.

82.     Plaintiff suffered extreme distress on account of Mr. Week's confinement of her to his private office and harassing conduct while she was confined. Indeed, Plaintiff was thereafter fearful of being alone with Mr. Weeks and having to deal with him after her shifts in order to cash out and collect the wages she earned.

83.     Shane Weeks was an employee of Ruby Tuesday and was on duty and performing his job function of cashing out food servers at the time the conduct occurred. The conduct occurred on the premises of the Ruby Tuesday restaurant where Plaintiff worked.

## COUNT TEN: ASSAULT

84.     The preceding paragraphs are incorporated into this Count as if fully set forth herein.

85.     As a result of the constant and repeated unwanted touching of her breasts and nipples by Shane Weeks, Steven Febrees, and Curtis Fredericks, and other unwanted physical contact by her supervisors and co-workers, Plaintiff was forced to go work under the apprehension that she would be subjected to offensive touching of her breasts by Shane Weeks,

Steven Febrees, and Curtis Fredericks, particularly since her repeated complaints were ignored, or resulted in retaliation.

86.     The touching of Plaintiff's breasts and nipples, which caused Plaintiff such apprehension, was the result of deliberate or wanton conduct by employees of Ruby Tuesday while they were on duty and performing their job functions for Ruby Tuesday, and occurred on the premises of the Ruby Tuesday restaurant where Plaintiff worked.

87.     Plaintiff suffered emotional distress, and anxiety as a result of having to work under the apprehension that she would be subjected to offensive touching of a sexual nature by her supervisors and co-workers.

## COUNT ELEVEN: BATTERY

88.     The preceding paragraphs are incorporated into this Count as if fully set forth herein.

89.     Shane Weeks, Steven Febrees, and Curtis Fredericks engaged in repeated unwanted and deliberate touching of Plaintiffs' breasts, and Steven Febrees also engaged in repeated unwanted and deliberate touching of Plaintiff's breasts and nipples.  Further, Shane Weeks forcibly attempted to have Plaintiff touch him near his crotch.

90.     This unwanted touching of a sexual nature was offensive to Plaintiff's sense of personal dignity and would offend the sense of personal dignity of any reasonable person.

91.     The touching of Plaintiff's breasts and nipples, and other unwanted physical conduct of a sexual nature was the result of deliberate or wanton action by employees of Ruby Tuesday while they were on duty and performing their job functions for Ruby Tuesday, and occurred on the premises of the Ruby Tuesday restaurant where Plaintiff worked.

92.   Plaintiff suffered emotional distress and anxiety as a result of being subjected to offensive touching of a sexual nature by her supervisors and co-workers.

## PRAYER FOR RELIEF

WHREFORE, Plaintiff requests this Honorable Court to order:

1.   Actual damages,

2.   Punitive damages,

3.   Attorneys fees,

4.   Costs of prosecution, and

5.   Such other relief as the Court may find just.


Dated: June 26, 2015                    PLAINTIFF, JENESSA GARDNER

                                        By: _____
                                        Nicole W. Fox
                                        The Sobelsohn Law Firm
                                        21 Benedict Place
                                        Greenwich, CT 06830
                                        T: (818) 986-6900
                                        F: (818) 530-4342
                                        nfox@sobelsohnlaw.com
                                        Juris No. 416762

                                        Daniel E. Sobelsohn
                                        THE SOBELSOHN LAW FIRM
                                        16027 Ventura Blvd.
                                        Suite 608
                                        Encino, CA 91436
                                        Tel: (310) 775-0504
                                        Fax: (818) 530-4342
                                        dsobelsohn@sobelsohnlaw.com

                                        Adam Gonnelli (#ct28896)
                                        FARUQI & FARUQI, LLP
                                        369 Lexington Avenue, 10th Floor
                                        New York, NY 10017
                                        Tel.: (212) 983-9330
                                        Fax: (212) 983-9331
                                        agonnelli@faruqilaw.com

ATTEST
A TRUE COPY
CHARLES J. LILLEY
CONNECTICUT MARSHAL
HARTFORD COUNTY

17

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Dated: June 26, 2015

PLAINTIFF, JENESSA GARDNER

By: _Nicole W. Fox_

Nicole W. Fox
The Sobelsohn Law Firm
21 Benedict Place
Greenwich, CT 06830
T: (310) 775-0504
F: (818) 530-4342
nfox@sobelsohnlaw.com
Juris No. 416762

Daniel E. Sobelsohn
THE SOBELSOHN LAW FIRM
16027 Ventura Blvd., Suite 608
Encino, CA 91436
Tel: (310) 775-0504
Fax: (818) 530-4342
dsobelsohn@sobelsohnlaw.com

Adam Gonnelli (#ct28896)
FARUQI & FARUQI, LLP
369 Lexington Avenue, 10th Floor
New York, NY 10017
Tel.: (212) 983-9330
Fax: (212) 983-9331
agonnelli@faruqilaw.com

ATTEST:
A TRUE COPY

CHARLES J. LILLEY
CONNECTICUT MARSHAL
HARTFORD COUNTY

18

RETURN DATE: AUGUST 4, 2015

| | | |
|---|---|---|
| JENESSA GARNDER, | ) | SUPERIOR COURT |
| Plaintiff, | ) | |
| vs. | ) | ANSONIA-MILFORD JUDICIAL |
| RUBY TUESDAY, INC., | ) | DISTRICT |
| | ) | AT MILFORD |
| Defendant. | ) | |
| | ) | JUNE 26, 2015 |

## <u>STATEMENT OF AMOUNT IN DEMAND</u>

The plaintiff in the above-referenced matter claims compensatory money damages in an amount greater than $15,000 Dollars, exclusive of interest and costs, as well as punitive damages, and attorneys' fees.

Dated: June 26, 2015

PLAINTIFF, JENESSA GARDNER

By: _____
Nicole W. Fox
The Sobelsohn Law Firm
21 Benedict Place
Greenwich, CT 06830
T: (310) 775-0504
F: (818) 530-4342
nfox@sobelsohnlaw.com
Juris No. 416762

Daniel E. Sobelsohn

ATTEST:
A TRUE COPY
CHARLES J. LILLEY
CONNECTICUT MARSHAL
HARTFORD COUNTY

1

THE SOBELSOHN LAW FIRM
16027 Ventura Blvd., Suite 608
Encino, CA 91436
Tel: (310) 775-0504
Fax: (818) 530-4342
dsobelsohn@sobelsohnlaw.com

Adam Gonnelli (#ct28896)
FARUQI & FARUQI, LLP
369 Lexington Avenue, 10th Floor
New York, NY 10017
Tel.: (212) 983-9330
Fax: (212) 983-9331
agonnelli@faruqilaw.com